UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LUCAS G. SALAVA and
ALISSA M. SALAVA, husband and
wife,

      Plaintiffs,

      v.                                                                 Civil No. 20-cv-1360 WJ/KK

WALTER R. BUNT and KATHY M.
BUNT, husband and wife,

      Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**
**<u>GRANTING PLAINTIFFS' REQUEST FOR MONEY DAMAGES, INTEREST AND</u>**
**<u>FEES AND COSTS</u>**
**<u>and</u>**
**<u>ALLOWING SUPPLEMENTATION FOR FEES AND COSTS</u>**

THIS MATTER comes before the Court upon Plaintiffs' Motion for Default Judgment, filed March 9, 2021 **(Doc. 9)**. Having reviewed the parties' briefing and the applicable law, the Court finds that the motion has merit and will be granted. Plaintiffs' counsel will also be given the opportunity to supplement their request for fees and costs for the period of time occurring from the time Plaintiffs' motion was filed to entry of this Order.

## BACKGROUND

On December 30, 2020, Plaintiffs ("the Salavas") filed a complaint for breach of contract in federal court, based on diversity jurisdiction.[1] 28 U.S.C. §1332. Plaintiffs ("Salavas" or "Plaintiffs") allege that Defendants ("Bunts" or "Defendants") breached their obligations under a

---

[1] According to the complaint, the Salavas are citizens of Florida and the Blunts are "either citizens of New Mexico or Hawaii since they own residential properties in both states and spend time in each state." Doc. 1, ¶¶3-4.

Settlement Agreement ("Agreement") executed by the Plaintiffs and the Defendants, all of whom are described in the Agreement as "officers, directors, and shareholders of Golden Arsches, Inc. ("GAI").[2] *See* Doc. 1-1 (Settlement Agreement). The relevant portions of the Agreement are the following:

- The Bunts were required to provide the Salavas with a document detailing the Bunts' estate, real property, bank accounts, insurance policies or negotiable financial instruments owned in whole or in part by the Bunts or in which they have an interest and whose balance or liquidated value is greater than One Hundred Thousand Dollars ($100,000). *See* Doc. 1-1, ¶A(1)(a).

- The Bunts were required to provide the Salavas with a certified copy of a Codicil to their Last Will and Testament ("Codicil") which would be contractual and irrevocable except as provided in the Agreement; and that it include a bequest to the Salavas of Three Hundred Thousand Dollars ($300,000) upon the death of the second of the Bunts to die **("Testamentary Obligation").** Doc. 1-1, ¶A(1)(b) (emphasis added).

- The Bunts were required to provide to the Salavas annually a written report of the Bunts' estate's liquidation value rounded to the nearest One Hundred Thousand Dollars ($100,000). This report was to include a description of how the liquidation value was calculated, or a certified accountant's attestation to the report's completeness and accuracy, or both, at the discretion of the Bunts. Doc. 1-1 (¶4).

- Failure by the Bunts to provide the required annual written report of their estate's liquidation value within fifteen (15) months of the previous report would be considered a material breach of contract, **the remedy for which would be the acceleration of the Bunts' future financial obligation (the Testamentary Obligation) to the Salavas, which will become immediately due and payable in whole.** Doc. 1-1, ¶4; *see* Doc. 1-1, ¶A(1)(b) (emphasis added).

- The Bunts agreed not to take any action, including the sale of, gifting of, wasting of, depletion of, or the creation of a third-party interest in their property, which would cause the value of their estate to fall below twice the value necessary to pay the Testamentary Obligation. If they did, the **Testamentary Obligation** would become immediately due and payable. Doc. 1-1, ¶5 (emphasis added).

- The Bunts also agreed to provide the Plaintiffs with no less than three (3) days' notice of any intended or impending change to the title of any of any intended or impending change to the title of any real property they owned. Doc. 1-1, ¶¶6-8.

---

[2] The Court assumes GAI is a business venture between the Salavas and the Bunts, but there is no information in the pleadings regarding its nature.

- Should the Bunts take any action to relieve themselves of any responsibility contained in this settlement agreement, the amount of **Three Hundred Thousand Dollars ($300,000) will become immediately due and payable, in cash, to the Salavas**. This amount shall be considered liquidated damages and shall, when paid, satisfy any and all of the Salavas' claims, complaints, or grievances, if any, against the Bunts . . . Doc. 1-1, ¶9.

The Agreement became effective on October 15, 2014. Doc. 1-1 at 6.[3] The parties agreed that it would be construed and interpreted in accordance with the laws of the State of New Mexico. Doc. 1-1, ¶E. Plaintiffs claim that Defendants have breached their obligations under the Agreement and seek a Court Order awarding them the principal amount of $300,000 plus accrued pre-judgment interest and attorneys' fees.

## DISCUSSION

Fed.R.Civ.P. 55 sets out a two-step process for a party seeking a default judgment. First, a party must obtain the clerk's entry of default against the opposing party. Second, the party must move the Court to enter a default judgment. Fed.R.Civ.P. 55(a). The trial court is given broad discretion in deciding whether to enter a default judgment. *See Grandbouche v. Clancy*, 825 F.2d 1463, 1468 (10th Cir. 1987).

**I.     Liability Analysis for Default Judgment**

In this case, there has been no entry of appearance on behalf of the Bunts, or any other activity which could constitute a response to the Complaint. A Clerk's Entry of Default was filed on February 24, 2021. Doc. 8. Service on Defendant has also been effected, as required under Rule 55. *See* Docs. 4 & 5 (Affidavits of Service indicating that the Bunts were personally served at their residence in Cuba, New Mexico). *See Rogers v. Hartford Life and Acc. Ins. Co.*, 167 F.3d

---

[3] The Court notes New Mexico's statute of limitations for written contracts is six years. *See* NMSA § 37-1-3 (2018). Plaintiffs filed this lawsuit on December 30, 2020 which would appear to make it untimely by two months. However, courts are under no obligation to raise the time bar sua sponte, since statutes of limitations are not jurisdictional. *Day v. McDonough*, 547 U.S. 198, 205 (2006). The Court is even less inclined to take up the issue given Defendants' apparent lack of interest in defending this lawsuit.

933, 936 (5th Cir. 1999) (Until the plaintiff serves the defendant, the defendant has no duty to answer the complaint and the plaintiff cannot obtain a default judgment); *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.").

Once a defendant is found to be in default, a court must "t[ake] as true all factual allegations in the complaint, except those pertaining to the amount of damages." *Archer v. Eiland*, 64 F. App'x 676, 679 (10th Cir. 2003). A court is not required to accept the plaintiff's legal conclusions or factual allegations when assessing damages and must ensure that there is a legal basis for the damages specified in the default judgment. *Klapprott v. United States*, 335 U.S. 601, 611-12 (1949).

Plaintiffs request default judgment against the Bunts because the Bunts have breached their obligations under the Agreement by:

(a) failing to provide the initial documentation of their real property and other assets (which became due on January 15, 2016, 15 months following the execution of the Agreement);

(b) failing to provide any of the annual written reports of their estate's liquidation value or other accounting information as required by the Agreement (which became due ; and by

(c) failing to provide required notice of a change in title of real property owned by the Defendants and located at 77-356 Nohealani St, Kailua-Kona, Hawaii, which occurred in February 2018 when the Defendants refinanced a mortgage on such property in an amount of $550,000.

In an Affidavit attached to the motion, Mr. Salavas states that he has communicated with the Bunts in an attempt to resolve the matter amicably, but was unsuccessful in those efforts. Doc. 9-1, ¶11.

The Court has reviewed the Agreement executed by the Salavas; the allegations in the Complaint; and the representations made by the Salavas which the Court must accept as true when considering whether default judgment is appropriate. Plaintiffs have provided adequate factual support for their contention that Defendants breached the Settlement Agreement on October 15, 2014, and adequate legal support for their claim that the Bunts fell into a state of default on the Settlement Agreement fifteen (15) months later, on January 15, 2016. *See* Doc. 9-1 (Affidavit). Therefore the Court finds that the Bunts have breached their obligations under the Agreement, that the Bunts' financial obligations have now become immediately due and that Plaintiffs are entitled to default judgment on liability.

## II. Damages Analysis

Under Fed.R.Civ.P. 55(b)(1), judgment can be entered for a "sum certain" or a "sum that can be made certain by computation" where a defendant has been defaulted for a failure to appear. *KPS & Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 20 (1st Cir. 2003). To be a "sum certain" there must be no doubt as to the amount that must be awarded. Here, there is no doubt as to the amount the Bunts' are obligated to pay. The language of the Agreement is clear regarding the consequences of a failure by the Bunts to satisfy their enumerated obligations, which is a liquidated damages amount of $300,000 (the "Testamentary Obligation") that becomes immediately due upon breach. Therefore, the Bunts shall be ordered to pay the Salavas $300,000.

## III. Pre- and Post-Judgment Interest

### A. Pre-Judgment Interest

In addition to an award of the principal amount of $300,000, Plaintiffs seek accrued pre-judgment interest pursuant to NMSA §56-8-3, claiming that interest has accrued at the statutory rate of fifteen percent (15%) from January 15, 2016 to February 25, 2021 and continues to accrue.

As of February 25, 2021, Plaintiffs represent that the total amount of pre-judgment interest accrued is $230,301.36, using the following calculations:

- 1868 days / 365 days/year = 5.117808 years;
- $300,000 (0.15 × 5.117808) = $230,301.36.
- Daily interest continues to accrue at the rate of $123.29.

The purpose of an award of prejudgment interest under §56-8-3 is to compensate a plaintiff for the lost opportunity to use the money owed between the time the plaintiff's claim accrued and the time of judgment. *Sunwest Bank v. Colucci*, 117 N.M. 373, 377 (1994) (§56-8-3 allows prejudgment interest "as a matter of right in cases based on money due by contract . . . ."); *City of Farmington v. Amoco Gas Co.*, 777 F.2d 554, 556 (10th Cir. 1985) (federal courts apply this New Mexico statute when dealing with prejudgment interest on state-court claims).

Although prejudgment interest is ordinarily awarded in a federal case, it is generally not recoverable as a matter of right and a court uses its discretion to determine whether an award of prejudgment interest would serve to compensate the injured party. *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1257 (10th Cir.1988). However, when the amount owed is fixed or readily ascertainable (as under a contract), prejudgment interest under NMSA §56-8-3 "generally should be awarded absent peculiar circumstances as a matter of right." *Stonebridge Life Ins. Co. v. Garcia*, No. CV 10-582 MV/DJS, 2011 WL 13112576, at *5 (D.N.M. Sept. 28, 2011) (citing *State ex rel. Bob Davis Masonry, Inc. v. Safeco Ins. Co. of Am.*, 118 N.M. 558, 560-61 (1994) (noting that § 56-8-3 "allows prejudgment interest in cases proving money due by contract); *see also Biava v. Insurers Admin. Corp.*, Nos. 94-2013, 94-2014, 1995 WL 94461, *6 (10th Cir. March 1, 1995) (affirming award of prejudgment interest in ERISA case based on New Mexico's interest statute because it served to compensate the insured for the insurance company's failure to pay benefits and was not otherwise inequitable).

The Settlement Agreement clearly sets out the amount of money owed by the Bunts upon breach and so the Court finds an award of pre-judgment interest to be appropriate. The Court therefore grants Plaintiffs' request for an amount of $230,301.36, accruing at the rate of $123.29 a day until final judgment is entered.

B.  Post-Judgment Interest

Post-judgment interest compensates plaintiffs "for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. at 835–36 (citations and internal quotations omitted); *Kelley v. City of Albuquerque,* No. CIV-03-507 JB/ACT, 2006 WL 1305038, at *2 (D.N.M. Apr. 12, 2006) (noting that the Supreme Court has "tacitly agreed that §1961(a) does not control the award of prejudgment interest) (citing *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827 (1990)).

28 U.S.C. §1961 provides: "Interest shall be allowed on any money judgment in a civil case recovered in a district court . . . Such interest shall be calculated from the date of the entry of the judgment . . . ." *See Latham v. First Marine Ins. Co.,* 2001 WL 811669 (10th Cir. Okla.) (federal rate of post-judgment interest governs diversity cases).

Awarding post-judgment interest is mandatory. *Kelley v. City of Albuquerque*, No. CIV-03-507 JB/ACT, 2006 WL 1305038, at *2 (D.N.M. Apr. 12, 2006) (citing *Bancamerica Commer. Corp. v. Mosher Steel*, 103 F.3d 80, 81 (10th Cir.1996)).     Plaintiffs are therefore awarded post-judgment interest on the liquidated damages owed by the Bunts ($300,000) from the date final judgment is entered in this case.[4]

IV.  **Attorneys' Fees and Costs**

---

[4] Post-judgment interest is calculated at a rate "equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. §1961(a).

Plaintiffs' counsel has submitted an Affidavit with a time/expense sheet in support of their request for attorneys' fees and costs in the total amount of $5,058.83. Doc. 9-2. The Tenth Circuit requires that a court hold a hearing in order to determine the amount of reasonable attorneys' fees. *H.B. Hunt v. Inter–Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir.1985). However, "a live evidentiary hearing is not always required, and the hearing requirement can be satisfied by the submission of affidavits or other proper documentary evidence if doing so will create a record sufficient for the court to decide the matters before it." *Malluk v. Berkeley Highlands Prods., LLC*, No. 19-CV-01489-CMA, 2020 WL 1033339, at *2 (D. Colo. Mar. 3, 2020).[5] Here, a hearing is both unnecessary and inefficient because counsel has already submitted the same information they would present at a hearing in order to assist the Court in determining the reasonableness of the fee request.

### A. Relevant Law and Legal Basis for Award of Fees

The Agreement provides:

> In the event of any litigation arising from or related to this agreement, the prevailing party shall be entitled to recover from the non-prevailing party all reasonable attorneys' fees and costs, and all other related expenses, including court fees and related fees, incurred in such litigation.

Doc. 1-1, ¶10. Plaintiffs have presented adequate factual support for their claims of breach of contract to merit the position of the prevailing party under the terms of the Agreement. *See, e.g., AMEC Earth & Env't, Inc. v. SolSource Energy Sols., LLC*, No. 11-CV-00135-PAB-KLM, 2012

---

[5] *See also Ullico Cas. Co. v. Abba Shipping Lines, Inc.*, 891 F. Supp. 2d 4, 7 (D.D.C. 2012); *Hermeris, Inc. v. McBrien*, No. 10-2483-JAR, 2012 WL 1091581, at *1 (D. Kan. Mar. 30, 2012) ("Damages may be awarded only if the record adequately reflects the basis for award via a hearing or a demonstration by detailed affidavits establishing the necessary facts."); *DeMarsh v. Tornado Innovations, L.P.*, No. 08-2588, 2009 WL 3720180, at *2 (D. Kan. Nov. 4, 2009) (same) (quoting *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538 1544 (11th Cir. 1985); *Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1154 (D. Kan. 2018) (A court may award damages "only if the record adequately reflects the basis for [the] award via a hearing or a demonstration by detailed affidavits establishing the necessary facts") (internal quotations omitted).

WL 3757479, at *2 (D. Colo. Aug. 27, 2012) (where fees were due under the subcontract, court found that plaintiff pled "sufficient facts to secure a default judgment on its claims for breach of contract and therefore was entitled to reasonable attorneys' fees as the prevailing party); *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1280 (D. Kan. 2016) (finding plaintiff awarded default judgment was entitled to reasonable attorneys' fees and costs under the Americans With Disabilities Act); *IMM, LLC v. Plankk Techs. Inc.*, No. 19-CV-02629-CMA, 2020 WL 902320, at *2 (D. Colo. Feb. 25, 2020) (granting attorneys' fees in default judgment to plaintiff under terms of service agreement as prevailing party). The Court must now decide whether the requested award is reasonable.

This Court has discretion to determine the amount of a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The amount awarded by a court is generally based on a "lodestar" amount, which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley*, 461 U.S. at 433; *Ramos v. Lamm*, 713 F.2d 546, 557 (10th Cir. 1983), overruled on other grounds by *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 725 (1987). The Tenth Circuit has outlined twelve factors, commonly referred to as the *Johnson* factors, for a court to consider when determining the reasonableness of an award of attorneys' fees, as articulated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[6] In evaluating the reasonableness of a fee award, a court need specifically address only relevant *Johnson* factors. *Faulkner v. Ensign United States Drilling Inc.*,

---

[6] The *Johnson* factors are: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) any prearranged fee - this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

9

No. 16-CV-03137-PAB-KLM, 2020 WL 550592, at *3 (D. Colo. Feb. 4, 2020) (citing *Gudenkauf v. Staffer Commc'ns, Inc.*, 158 F.3d 1074, 1083 (10th Cir. 1998)).

B.  Analysis

Counsel seek $4086.00 in fees, $619.39 in expenses and $353.44 in gross receipts taxes. Doc. 9-2. The time sheet entries represent work done on this matter from November 2020 through February 28, 2021 by Attorney Robert J. Muehlenweg, a shareholder in RMH Lawyers, P.A., and Christian P. Goldsmith, an associate employed by the firm. Additional legal services have continued after February 28, 2021 and are not included in the time sheet. Mr. Muehlenweg has been practicing commercial and business law for over thirty years, most of that time here in the state of New Mexico. His current hourly rate for litigation matters is $300.00. Mr. Goldsmith was admitted to practice law in New Mexico in 2019 and is experienced in general litigation and collection matters. His hourly rate is $190.00.

The time sheet entries indicate that Mr. Muehlenweg did most of the work in this litigation, which given his experience, seems to be the most efficient way of approaching the matter. The time sheet entries list time spent: (1) on phone conferences with Plaintiffs; (2) reviewing the Settlement Agreement; (3) drafting and finalizing of the complaint; (4) preparing documents and affidavits necessary for seeking the entry of default; and (5) preparing the instant motion for default judgment including requests for prejudgment interest and fees. The Court notes that there is no charge for Mr. Goldsmith's attendance at a firm conference held on this matter (time entry 2/22/21) and that Mr. Goldsmith discounted an hour's worth of his time in the collection and preparation of the documents necessary in seeking the entry of default (time entry 2/23/21). These entries support Mr. Muehlenweg's representation that certain matters were assigned to Mr. Goldsmith in order to handle the case in a more cost effective manner and to avoid duplication of efforts. Doc. 9-2, ¶3.

The Court finds that:

(1) the requested fee award of $4086.00 is based on reasonable hourly rates and expenditures of time—by both attorneys;

(2) under the relevant *Johnson* factors, the requested amount is consistent with the experience and abilities of Mr. Muehlenweg and Mr. Goldsmith;

(3) counsel seek a very reasonable amount of fees for what the Court considers to be a substantial sum of money and interest they obtained for their clients; and

(4) the amount of $619.39 for expenses incurred related to court fees and service, and $353.44 for gross receipts tax, is also reasonable. Doc. 9-2 at 6. *See Herrera v. First Northern Sav. & Loan Ass'n,* 805 F.2d 896 (10th Cir. 1986) (noting that some courts have included gross receipts tax of attorney's fee awards with no discussion).

In sum, the total amount of $5,058.83 for fees, costs and gross receipts tax requested by Plaintiffs are reasonable and necessary, and they are supported by the accompanying Affidavit and time sheets. Therefore, the Court finds no need to adjust this "lodestar" amount and GRANTS these requests.

C. Further Supplementation for Unbilled Fees and Costs

Last, Plaintiffs' counsel notes that attorneys' fees for the time period after February 28, 2021, in connection with ongoing matters in this case, have not yet been billed to Plaintiffs but will be at the next regularly scheduled billing date. They request leave to file a supplement to the Affidavit with updated time sheets (which of course will not need to include attendance at a hearing). The Court grants this request as well, to be filed with the Court **within two (2) weeks of the entry of this Order.**

**CONCLUSION**

In sum:

(1) The Court grants Plaintiffs' request for an Order granting default judgment. The language of the Agreement is clear regarding the consequences of a failure by the Bunts to satisfy their enumerated obligations, which is a judgment amount of $300,000 that becomes immediately due. Therefore, the Bunts shall be ordered to pay the Salavas $300,000.

(2) The Court finds an award of pre-judgment interest to be appropriate and grants Plaintiffs' request for an amount of $230,301.36, accruing at the rate of $123.29 a day until final judgment is entered;

(3) Plaintiffs are awarded post-judgment interest pursuant to 28 U.S.C. §1961 on the judgment amount from the date final judgment is entered in this case;

(4) The Court grants Plaintiffs' request for attorneys' fees and costs, including gross receipts tax, in the total amount of $5,058.83, and orders this amount payable by Defendants to Plaintiffs' counsel immediately; and

(5) Plaintiffs' counsel may supplement the Affidavit and time sheets **within two (2) weeks of the entry of this Order.**

**THEREFORE,**

**IT IS ORDERED** that Plaintiffs' Motion for Default Judgment **(Doc. 9)** is GRANTED as to (1) Plaintiffs' requested judgment amount in that the Bunts are ordered to pay the Salavas the sum of $300,000 which is due immediately, for reasons described in this Memorandum Opinion and Order;

(2) requested accrued pre-judgment interest in the amount of $230,301.36, and continuing to accrue on the outstanding principal amount from February 26, 2021 until paid at the statutory rate of fifteen percent (15%) per annum; and

(3) mandatory post-judgment interest on the judgment amount from the date final judgment is entered in this case.

(4) The Court grants Plaintiffs' request for attorneys' fees and costs, including gross receipts tax, in the total amount of $5,058.83, and orders this amount payable by Defendants to Plaintiffs' counsel immediately; and

(5) **Within two (2) weeks of the entry of this Order,** Plaintiffs' counsel may supplement the Affidavit and time sheets associated with legal services and expenses occurring after the time the motion for default judgment was filed until the entry date of this Order.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE